UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT WRIGHT,

                 Petitioner,               Case No. 1:16-cv-1357

v.                                      Honorable Robert J. Jonker

MARK MCCULLICK,

                 Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Wright is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of one count each of first-degree premeditated murder, Mich. Comp. Laws § 750.316(a), assault with intent to murder, Mich. Comp. Laws § 750.83, and being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, together with three counts of possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On October 8, 2012, the court sentenced Petitioner as a habitual offender-third offense, Mich. Comp. Laws § 769.11, to life imprisonment on the murder conviction, 25 to fifty years' imprisonment for the assault conviction, and four years, nine months to ten years on the felon-in-possession conviction, all consecutive to three concurrent terms of two years on the felony-firearm convictions.

On November 13, 2016, Petitioner filed his habeas corpus petition.  (ECF No. 1.)  On February 3, 2017, Petitioner filed his amended his petition.  (ECF No. 10.)  The amended petition raises seven grounds for relief, paraphrased as follows:

I.  Petitioner's conviction failed the sufficiency of evidence test.

II.  Petitioner was denied his due process right to a fair trial by admission of hearsay.

III.  The trial court's *sua sponte* joinder of multiple defendants in one trial violated Petitioner's due process rights.

IV.  Petitioner was denied his right to a fair trial when the prosecutor introduced the perjured testimony of Jaquan Henderson, a co-defendant.

V.  The prosecutor purposely suppressed evidence, a letter written by Claudia Ford, that affected the outcome of the trial.

VI.  Trial counsel was ineffective throughout the entire trial.

VII.  Appellate counsel was ineffective by failing to present all viable issues and then preventing Petitioner from presenting those issues himself.

(Am. Pet., ECF No. 10, PageID.111-132.)  Respondent moved to dismiss the petition as untimely.  The Court denied that motion by order entered November 30, 2017.  (ECF No. 18.)  Respondent then filed an answer to the petition (ECF No. 21) stating that the grounds should be denied because they are procedurally defaulted and/or meritless.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner's first two grounds are meritless and the remaining grounds are procedurally defaulted.  Accordingly, I recommend that the petition be denied.

## Discussion

I.    Proposed Findings of Fact

On January 8, 2012, in Kalamazoo, Michigan, Romney Hunter and Troy Whitfield were shot.  Petitioner testified regarding the incident.  He acknowledged that he, Steven Anderson, and Jaquan Henderson met up near the location of the shooting for the purpose of exacting revenge on Romney Hunter for Hunter's role in beating up and robbing Petitioner a few weeks earlier.  (Trial Tr. VIII at 1723-27, ECF No. 16-12, PageID.2178-82.)  Petitioner claims that he intended the revenge to take the form of a physical beating.  (*Id.* at 1727, PageID.2182.)  When the three gathered, however, Anderson produced a handgun and expressed his intention to shoot Hunter.  (*Id.* at 1733-34, PageID.2188-89.)  Petitioner testified that he did not want to be involved in a shooting, so he walked away.  (*Id.* at 1734-36, PageID.2189-91.)  He heard shots, but did not know who was shot or who did the shooting.  (*Id.* at 1737-38, PageID.2192-2193.)

Jaquan Henderson told a different story.  He corroborated Petitioner's claim that Petitioner's revenge upon Hunter was supposed to take the form of a physical beating.  (Trial Tr. III at 656, ECF No. 16-6, PageID.1079.)  But, Henderson testified that Petitioner took the gun offered by Anderson, Anderson took a shotgun, and Henderson took a different handgun[1] and the three proceeded to Hunter's location and started shooting.  (*Id.* at 660-69, PageID.1083-90.)  Henderson never saw

---

[1] Henderson was given a .380-caliber handgun earlier in the day by Petitioner.  (Trial Tr. III at 649-50, ECF No. 16-6, PageID.1072-73.)

Petitioner shoot the victim.[2]  (Trial Tr. IV at 769, 794, ECF No. 16-7, PageID.1175, 1200.)  Nonetheless, the day after the shooting, Petitioner told Henderson he shot one of the victims and that the victim ran into the middle of the street and fell face first to the pavement.  (Trial Tr. III at 672, ECF No. 11-6, PageID.1095.) Anderson did not testify.

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals, raising three issues: the issues identified as Habeas Issues I and II, above, and a claim that he was denied a fair trial by the playing of a videotape showing a violent assault by Henderson of another individual at Petitioner's prompting.  (Pet'r's Appeal Br. at v, ECF No. 16-18, PageID.24666.)  On June 26, 2014, the court of appeals issued an opinion affirming Petitioner's convictions.  (Mich. Ct. App. Op., ECF No. 16-18, PageID.2430-37.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the three issues he had raised in the Michigan Court of Appeals and five new issues.  (Pet'r's Appl. for Leave to Appeal, ECF No. 16-20, PageID.2554-65.)  The five issues in Petitioner's application seeking leave to appeal to the supreme court raised the same challenges that Petitioner presents in Habeas Issues III, IV, V, and VII, in this Court.  The supreme court denied leave to order entered February 3, 2015.  (Mich. Order, ECF No. 16-20, PageID.2551.)

---

[2] Although Henderson did not see Petitioner fire the bullet that killed the victim, the crux of all of the testimony regarding the bullet, which was with the victim when he came to the hospital, was that the bullet was fired from a gun the same caliber as the gun that Anderson had given Petitioner.  Moreover, that bullet could not have been fired by the handgun that Henderson carried or the shotgun that Anderson carried.

Petitioner returned to the trial court.  On April 22, 2016, he filed a motion for relief from judgment raising six issues: four of the five new issues from his Michigan Supreme Court application for leave to appeal—he omitted the ineffective assistance of appellate counsel issue—and two new issues, a claim that the trial court erred in failing to grant an evidentiary hearing and a claim that trial counsel rendered constitutionally ineffective assistance.  (Pet'r's Mot. for Relief from J., ECF No. 16-16, PageID.2396-2408.)  That last claim is raised in this Court as Habeas Issue VI.  By order entered May 18, 2016, the trial court denied Petitioner's motion because he had failed to establish cause for his failure to raise these issues on direct appeal or prejudice.  (Kalamazoo Cty. Cir. Ct. Order, ECF No. 16-17, PageID.2422-29.)

Petitioner filed an application for leave to appeal the trial court's denial of his motion for relief from judgment.  (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 16-19, PageID.2530-36.)  The Michigan Court of Appeals notified Petitioner of defects in his filing.  Specifically, Petitioner had failed to either pay the fee or provide a motion for waiver of fees and costs; he also failed to provide a proof of service or the lower court docket journal sheets.  (Pet'r's Mot., ECF No. 16-19, PageID.2546.)  Petitioner failed to timely correct the defects so his application for leave to appeal was dismissed on July 26, 2016.  (Mich. Ct. App. Order, ECF No. 16-19, PageID.2529.)  The dismissal was "without prejudice to whatever other relief [might] be available consistent with the Court Rules." (*Id.*)

Petitioner responded with a letter, affidavit, and proof of service indicating that he had, indeed, timely submitted the documents to the appellate court.  Careful

examination of the proof of service Petitioner submitted, however, reveals that the documents identified as served on the proof of service were not the documents identified as missing by the court of appeals.  (Proof of Service, ECF No. 16-19, PageID.2548.)  The Michigan Court of Appeals construed Petitioner's submission as a motion for reconsideration; but, by order entered September 1, 2016, denied relief. (Mich. Ct. App. Order, ECF No. 16-19, PageID.2550.)

Petitioner did not pursue the matter further by applying for leave to appeal in the Michigan Supreme Court.  (Affidavit of Mich. Supreme Ct. Clerk, ECF No. 16-21, PageID.2667.)  Instead, he filed his initial habeas petition in this Court.

## II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575

U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words,

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Exhaustion and Procedural Default

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410,

8

414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  The district court can and must raise the exhaustion issue *sua sponte*, when it plainly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Here, Petitioner's Habeas Issues I and II are exhausted.  Petitioner fairly presented the claims to all levels of the state appellate system.  Petitioner's Habeas Issues III-VII, however, have not been fairly presented to each level.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern.  *Picard*, 404 U.S. at 277-78; *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).  With regard to procedure, "[t]he fair presentation requirement is not satisfied [] when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely."  *Mubashir v. Bradshaw*, 525 F. App'x 346, 348 (6th Cir. 2013) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)).

Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation."  *Castille*, 489

U.S. at 351.  Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court.  *See Hickey v. Hoffner*, 701 F. App'x 422, 425 (6th Cir. 2017); *Stokes v. Scutt*, 527 F. App'x 358, 363-64 (6th Cir. 2013); *Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011).  Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts.  Petitioner's application for leave to appeal, which raised Habeas Issues III, IV, V, and VII for the first time, was denied, and, thus, the issues were not reviewed.

Petitioner, perhaps in recognition of his failure to fairly present the issues on direct appeal, raised all but one of them in his motion for relief from judgment. Petitioner raised Habeas Issues III, IV, and V in the motion.  He also included, for the first time, Habeas Issue VI.  But, he did not raise Habeas Issue VII regarding ineffective assistance of appellate counsel.

After the trial court denied his motion, Petitioner raised Habeas Issues III, IV, V, and VI in the Michigan Court of Appeals for the first time.  But, he did not raise the issues in a procedurally appropriate manner.  He never paid the filing fee or moved for leave to proceed without paying the fee.  For that reason, his application was dismissed.  Petitioner's procedurally inappropriate presentation of the issues in the court of appeals does not constitute fair presentation to that court.  Then, Petitioner failed to take the issues to the Michigan Supreme court at all.  (Affidavit

of Mich. Supreme Ct. Clerk, ECF No. 16-21, PageID.2667.)  Petitioner's Habeas Issue VII has never been fairly presented to any level of the state court system, and Petitioner's Habeas Issues III, IV, V, and VI have only been fairly presented to the trial court.  Accordingly, those issues remain unexhausted.

Exhaustion is only a problem, however, if there is a state court remedy available for Petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  If no further state remedy is available to the petitioner, the failure to exhaust does not bar review, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court.  *Id.*

Petitioner can no longer raise the issues in the Michigan Court of Appeals.  The time for seeking leave to appeal has long passed.  Mich. Ct. R. 7.205(G).  Similarly, the time for seeking leave to appeal in the Michigan Supreme Court has passed. Mich. Ct. R. 7.305(C).  Moreover, Petitioner already has filed in the trial court his one allotted motion under Mich. Ct. R. 6.502, leaving him with no available remedy.  At this juncture, the Court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

Petitioner offers no cause for his failure to fairly present the Habeas Issues III-VII in the Michigan Supreme Court or for his failure to fairly present those issues in a procedurally appropriate manner in the Michigan Court of Appeals.  Where a

11

petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). Petitioner is not entitled to habeas relief with respect to issues III-VII because of his procedural default.

IV.   Sufficiency of the Evidence

Petitioner contends that the evidence at trial was not sufficient to support a determination beyond a reasonable doubt that he committed first-degree premeditated murder. (Am. Pet., ECF No. 10, PageID.111.) In support of that contention, Petitioner offers the appeal brief prepared by his counsel. (Pet'r's Appeal Br., ECF No. 10-2, PageID.148-176.) The argument in the brief is focused on the intent element of first-degree murder and assault with the intent to commit murder. (*Id.* at 10-11, PageID.163-164.) The argument also addresses whether the evidence was sufficient to support a determination of the shooter's identity as Petitioner. With respect to both elements, intent and identity, Petitioner claims the evidence was only circumstantial and then, viewing the evidence in a light that favors him, explains why the evidence does not support the verdicts.

The Michigan Court of Appeals rejected Petitioner's argument:

> Wright's argument that there was insufficient evidence establishing that he was the shooter, even if true, does not necessarily negate criminal liability under an aiding and abetting theory, and Wright makes no effort to argue that the evidence was insufficient to show that he aided and abetted the shootings. Regardless, there was testimony showing that a .44 caliber weapon was handed to Wright prior to the shootings, that Wright made statements to others acknowledging that he fired his weapon, that the deceased victim was struck by a .44 caliber bullet, that Wright had a motive to instigate the assault and killing, and that Wright made efforts to conceal the murder, to dispose of the guns,

12

and to establish an alibi.  The evidence was more than adequate to support a conclusion by the jury that Wright discharged a firearm and that he indeed was the principal in shooting the decedent.  An aiding and abetting theory in regard to the victim who was merely injured was also fully supported by the evidence.

(Mich. Ct. App. Op. at 6-7, ECF No. 16-18, PageID.2435-36.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second,

deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).   This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The state appellate court cited state law in support of the sufficiency standard it applied; however, that standard is identical in all material respects to the *Jackson* standard.   Thus, it cannot be argued that the court of appeals applied the wrong standard.   Moreover, its application of the standard was entirely consistent with, and not contrary to, *Jackson*.   The court of appeals noted that, viewed in a light that favored the prosecution, the evidence showed:

> that a .44 caliber weapon was handed to Wright prior to the shootings, that Wright made statements to others acknowledging that he fired his weapon, that the deceased victim was struck by a .44 caliber bullet, that Wright had a motive to instigate the assault and killing, and that Wright made efforts to conceal the murder, to dispose of the guns, and to establish an alibi.

(Mich. Ct. App. Op. at 6, ECF No. 16-18, PageID.2435.)   That evidence, though perhaps circumstantial,[3] permits the inference that Petitioner intentionally shot and killed Romney Hunter.

---

[3] Petitioner's complaint that the evidence relied upon by the jury was circumstantial is without merit.  "Circumstantial evidence may be sufficient to support a conviction and need not remove every reasonable hypothesis of innocence."  *United States v. Seaton*, 45 F.3d 108, 110 (6th Cir. 1995) (citing *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)).

Petitioner's challenge does not claim that these facts are insufficient to support an inference, beyond a reasonable doubt, that Petitioner was guilty.  Instead, he claims that the statements he made to others could be interpreted differently.  Specifically, Petitioner contends that the state appellate court's determination that "Wright made statements to others acknowledging that he fired the weapon" depends on drawing one inference from the evidence when the jurors could have just as easily drawn another.

Jaquan Henderson testified regarding Petitioner's statements as follows:

[Petitioner] came over and told me . . . when [Petitioner] was in front of the house, [Petitioner] seen the [murder victim] and when [Henderson and Anderson] all got to shooting that's when the [murder victim] tried—he ran straight towards [Petitioner] and [Petitioner] just started letting loose on his ass.  Just like that.  And then [Petitioner] said after that the body ran into the middle of the street and fell face first—down on his face.

(Trial Tr. III at 672, ECF No. 16-6, PageID.1095.)[4]  Additionally, during cross-examination, Henderson testified "Robert Wright killed him . . . ."  (Trial Tr. IV at 738, ECF No. 16-7, PageID.1144.)  Finally, when answering questions from the jurors, Henderson testified: "No, I did not [see Robert Wright shoot Romney Hunter], but he told me himself right out of his own mouth.  And he was the only person in front of the house with a gun."  (*Id.* at 769, PageID.1175.)

Henderson's statements certainly permit the inference that Petitioner shot Romney Hunter; however, Petitioner invites the Court to view these statements differently.  He argues that Henderson understood Petitioner's statement as an

---

[4] For readability, an identifying appellation has been used in place of a derogatory racial slur.

15

admission to shooting a weapon at the scene, but that was not what it meant.  (Pet'r's Appeal Br. at 11-12, ECF No. 16-18, PageID.2477-78.)  Petitioner does not explain the true meaning of the statements.

Santrell Sandifer, an associate of Anderson's, testified that after the incident he was with Anderson.  (Trial Tr. VI at 1334-35, ECF No. 16-9, PageID.1740-41.) Sandifer said that Anderson pulled the .44 out of his hoodie and emptied the shells. (*Id.* at 1335, PageID.1741.)  As Anderson emptied the shells he said "[Petitioner] went the fuckoff." (*Id.*)  Sandifer testified that he told the police that meant that Petitioner started shooting. (*Id.* at 1349, PageID.1755.)

Anderson's statements to Sandifer also permit the inference that Petitioner shot Romney Hunter.  Once again, however, Petitioner argues that Sandifer's interpretation of "went the fuckoff" may have been wrong, particularly because Sandifer had only heard that the plan was to beat the victim.  Because Petitioner's statements to Henderson and Anderson's statements to Sandifer were misinterpreted, Petitioner argues, there is insufficient evidence to support the verdicts.  (Pet'r's Appeal Br. at 12, ECF No. 16-18, PageID.2478.)

Petitioner's argument fails for two reasons.  First, he urges the Court to view the evidence in a light that favors him instead of the prosecution.  Second, he asks the Court to usurp the jury's responsibility to draw reasonable inferences from those facts.  It is Petitioner's argument, not the Michigan Court of Appeals' determination, that is contrary to, and an unreasonable application of, *Jackson*.

Moreover, Petitioner's argument simply ignores the court of appeals' finding

16

that Petitioner was charged with aiding and abetting the murder, and the evidence sufficiently supported conviction on that charge.  Petitioner's argument that the facts do not support a finding that he pulled the trigger is inapposite with regard to a finding of guilt on the charge of aiding and abetting first-degree murder.  The court of appeals reviewed the evidence with regard to a charge of aiding and abetting in a light favorable to the prosecution against the state-law elements of that offense, as required by *Jackson*.  Petitioner does not even argue that the Michigan Court of Appeals' determinations with regard to his guilt as an aider and abettor are contrary to, or an unreasonable application of, *Jackson*.  Accordingly, he is not entitled to habeas relief.

V.    <u>Hearsay Evidence</u>

Petitioner next argues that his trial was rendered fundamentally unfair by the admission of two alleged hearsay statements: Sandifer's testimony that Anderson said "[Petitioner] went the fuck off[;]" and a question posed by witness Claudia Ford, mother of two of Petitioner's children, his girlfriend at the time of the shooting, and a co-conspirator in Petitioner's drug business, that referenced a pending federal prosecution against Petitioner.  (Pet'r's Appeal Br. at 13-17, ECF No. 16-18, PageID.2479-83.)  Petitioner also claims that his counsel rendered ineffective assistance for failing to object to the admission of this testimony.  (*Id.*) The Michigan Court of Appeals leapt over any question regarding the admissibility of the statements or the reasonableness of counsel's conduct, concluding that any possible error was harmless:

> We decline to address the substance or merits of Wright's arguments. Assuming a hearsay or Confrontation Clause error, the error was harmless and harmless beyond a reasonable doubt, considering the overabundance of other evidence establishing Wright's guilt.   MCL 769.26; *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005); *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).   Wright's associated claim of ineffective assistance of counsel likewise fails, given that he has not established the necessary prejudice. *Carbin*, 463 Mich at 600.

(Mich. Ct. App. Op. at 7, ECF No. 16-18, PageID.2436.)

In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court identified the harmless error standard the federal habeas court must apply no matter what standard the state court has applied:

> We hold that in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht [v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman [v. California]*, 386 U. S. 18 [(1967)]. Since the Ninth Circuit correctly applied the *Brecht* standard rather than the *Chapman* standard, we affirm the judgment below.

*Fry*, 551 U.S. at 121-22.   *Chapman* holds that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."   *Chapman*, 386 U.S. at 24 (1967).   That is the standard applied by the Michigan Court of Appeals.   (*See* Mich. Ct. App. Op. at 7, ECF No. 16-18, PageID.2436).   *Brecht* holds that the *Chapman* decision applies to cases on direct review but, on collateral review, "an error requires reversal only if it 'had substantial and injurious effect of influence in determining the jury's verdict.'"   507 U.S. at 631 (quoting *Kotteakos v. United States*, 328 U.S.750, 776 (1946)).   Put differently, a habeas petitioner must establish "actual prejudice." 507 U.S. at 637.

18

In *Davis v. Ayala*, 135 S. Ct. 2187 (2015), the Supreme Court clarified that its ruling in *Fry* did not abrogate the limitation on federal habeas relief expressed in 28 U.S.C. § 2254(d).  *Id.* at 2197-99.  Thus, where a state court has applied the *Chapman* standard on direct review to conclude that an error was harmless, under the AEDPA, "'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'"  *Id.* at 2199 (quoting *Fry*, 551 U.S. at 119).  Accordingly, Petitioner's claim fails if the Michigan Court of Appeals' application of *Chapman* was reasonable.

In *Stewart v. Trierweiler*, 867 F.3d 633 (6th Cir. 2017), the Sixth Circuit considered a challenge virtually identical to the one raised here.  Stewart complained that the trial court permitted the admission, through the testimony of police officers, of hearsay statements made by his non-testifying co-defendant and, thus, violated his right to confrontation.  *Id.* at 636.  The Michigan Court of Appeals agreed that some of the admitted statements violated Stewart's confrontation rights, but concluded the errors were harmless in view of the other considerable evidence that Stewart had murdered the victim.  *Id.*  The Sixth Circuit determined that the state court's conclusion—that the error was harmless in light of the admissible evidence that demonstrated Stewart's guilt—was reasonable.  *Id.*

In Petitioner's case, the litany of evidence the Michigan Court of Appeals relied upon for the sufficiency question did not even include Sandifer's testimony regarding Anderson's statement.  That evidence included the following:

> that a .44 caliber weapon was handed to Wright prior to the shootings, that Wright made statements to others acknowledging that he fired his

19

> weapon, that the deceased victim was struck by a .44 caliber bullet, that
> Wright had a motive to instigate the assault and killing, and that
> Wright made efforts to conceal the murder, to dispose of the guns, and
> to establish an alibi.

(Mich. Ct. App. Op. at 6, ECF No. 16-18, PageID.2435.)  The appellate court said

nothing about statements Anderson made to others.  Thus, Sandifer's testimony that

Anderson told Sandifer that Petitioner "went the fuck off," was entirely cumulative

of Henderson's testimony that Petitioner admitted shooting the victim.  Accordingly,

based on the reasoning of *Stewart*, I conclude that the court of appeals' determination

that the admission of the evidence was harmless is eminently reasonable.

The appellate court's reasonable conclusion that the admission of Anderson's

hearsay was harmless forecloses a determination that counsel rendered

constitutionally ineffective assistance when counsel failed to object.  In *Strickland v.*

*Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong

test by which to evaluate claims of ineffective assistance of counsel.  To establish a

claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or

fundamentally unfair outcome.  The court must determine whether, in light of the

circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance

was outside that range, the defendant is not entitled to relief if counsel's error had no

effect on the judgment.  *Id.* at 691.

The state appellate court's determination that the "hearsay" error was harmless "beyond a reasonable doubt" under *Chapman* means the error is also necessarily harmless under the lower threshold of *Brecht*.  The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*.  *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").    Therefore, Petitioner's corresponding claim that counsel rendered ineffective assistance when he failed to object to the hearsay is also without merit.

Petitioner's second concern, the reference to his federal drug prosecution during the testimony of Claudia Ford, does not, as Petitioner suggests, present a hearsay issue.  The testimony of Claudia Ford included the following exchange:

Q    You were asked a question about whether or not you saw yourself having a relationship him after all this was over with, you remember that?

A    Yes.

Q    And, you answered no.

A    Yes.  I mean, I'd have to have a relationship with him for the strength (sic) of our children.

Q    You have had what?

A    A relationship with him on the strength (sic) of our children.

Q    Okay.  And, if it was just you and he out in the world free, would you continue to have a relationship with him?

A    Yes.

Q    The reason you don't feel that you can have a relationship with him after this is over, is that because he has a different matter that's pending that would prohibit that from happening?

A    No, Sir.

Q    Because you're aware of his Federal case?

A    Yes, I am.

(Trial Tr. VI at 1299-30, ECF No. 16-9, PageID.1535-36.)  During that exchange, the prosecutor did not elicit from Ms. Ford any out-of-court statements.  *See* Mich. R. Evid. 801 ("'Hearsay' is a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.")  Petitioner offers no explanation as to how the testimony might be considered hearsay.

It is possible that Petitioner finds the exchange objectionable because it refers to Petitioner's federal prosecution for possession with intent to distribute 28 grams or more of cocaine base.  *United States v. Wright*, No. 1:12-cr-36 (W.D. Mich.).  At the time of Petitioner's murder trial, he had entered a plea of guilty and been sentenced to 188 months incarceration followed by 5 years of supervised release.  *United States v. Wright*, No. 1:12-cr-36, ECF No. 31 (W.D. Mich. Aug. 15, 2012).  The testimony might be objectionable because it refers to evidence of other crimes that may be inadmissible under Michigan Rule of Evidence 404(b).  Such evidence, however, is

22

admissible under certain circumstances.  Here, the prosecutor, over the objection of Petitioner's counsel,[5] moved to admit evidence concerning Petitioner's illegal possession and distribution of controlled substances.  (Trial Tr. II at 316-21, ECF No. 16-5, PageID.722-27.)  The trial court concluded such evidence was admissible.

The admission of 404(b) evidence does not raise a federal due process issue. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.

In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is admissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process

---

[5] Petitioner's counsel objected to the introduction of the Rule 404(b) evidence regarding Petitioner's participation in the possession and delivery of drugs.  (Trial Tr. II at 316-21, ECF No. 16-5, PageID.722-27.)  The trial court overruled the objection.  (*Id.*)  Petitioner's suggestion that counsel failed to object to the introduction of such evidence finds no support in the record.  Petitioner's claim that counsel rendered ineffective assistance because he failed to object is plainly meritless.

by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Poole v. Stewart*, No. 16-1729, 2017 WL 3014000, at *6 (6th Cir. July 14, 2017) ("Because '[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence,' reasonable jurists could not disagree with the district court's rejection of this claim on the ground that it failed to state a cognizable claim for habeas relief.") (quoting *Bugh*, 329 F.3d at 512).

Even if admission of 404(b) evidence regarding Petitioner's federal drug conviction were a constitutional error, however, the state appellate court's conclusion that the error was harmless is not unreasonable.  Petitioner's participation in the drug trade with Anderson, Henderson, and even Ms. Ford, was a foundational part of the prosecution's case.  The cryptic reference to another matter and a federal case pale in significance compared to the repeated references to the drug business that united all of the players in this case.  Moreover, the specific references here came not from the witness, but from the prosecutor.  The trial court specifically instructed the jury that the lawyers' questions to the jury are not evidence.  (Trial Tr. IX at 1862, ECF No. 16-13, PageID.2317.)  It is clearly established federal law that "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

For all of these reasons, Petitioner has failed to demonstrate that the Michigan Court of Appeals determinations that these errors were harmless are contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not

entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the

Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated: November 8, 2018          /s/  Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).